# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JEREMIAH L. BARROW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-CV-0667-CVE-TLW** |
| | ) | |
| **STATE OF OKLAHOMA ex rel. Department** | ) | |
| **of Public Safety and JONATHON** | ) | |
| **YSBRAND,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Motion for Summary Judgment (Dkt. # 17). Defendant Jonathon Ysbrand argues that he is entitled to qualified immunity from plaintiff's claim under 42 U.S.C. § 1983, because plaintiff cannot show that his constitutional rights were violated during a traffic stop. Defendant State of Oklahoma ex rel. Department of Public Safety (the State) asserts that it cannot be held liable for false arrest, because Ysbrand had probable cause to arrest plaintiff for driving under the influence of drugs and alcohol.

## I.

Ysbrand is a trooper with the Oklahoma Highway Patrol and, on February 15, 2016, he initiated a traffic stop of Jeremiah Barrow's vehicle after observing that Barrow's vehicle was pulling a trailer with an unsecured load and with no functional lights. Dkt. # 17-1, at 2. Barrow approached the vehicle from the driver's side and noticed that there was a male passenger in the vehicle. Dkt. # 17-2; Dkt. # 21-1, at 3. Ysbrand claims that he immediately detected the smell of alcohol when he made contact with the driver of the vehicle. Dkt. # 17-1, at 2; Dkt. # 21-1, at 3-4. Barrow gave his driver's license and insurance information to Ysbrand, and Ysbrand asked Barrow

to sit in his patrol car while he completed a traffic citation. Dkt. # 17-1, at 2. While seated next to Barrow, Ysbrand noticed the odor of alcohol coming from Barrow's breath. Id. Ysbrand believed that Barrow's speech seemed to be slurred and that Barrow was overly talkative. Id. Ysbrand checked Barrow's criminal history and learned that he had several prior convictions for driving under the influence of alcohol. Id.

Ysbrand believed that the odor of alcohol from Barrow's vehicle and his person, Barrow's criminal history, and his slurred speech and behavior indicated that Barrow could be under the influence of drugs or alcohol, and he determined that he had a sufficient basis to extend the traffic stop for further investigation. Id. at 3. Ysbrand asked Barrow to step out of the patrol car and stand in front of the patrol car, and Ysbrand asked Barrow if he had consumed any alcohol or if alcohol had been spilled on him. Id. at 3. Barrow denied that he had consumed any alcohol and he indicated that the passenger in his vehicle had spilled alcohol on him. Id. Ysbrand is a certified drug recognition instructor and he asked Barrow to perform standardized and non-standardized field sobriety tests. Id. Ysbrand asked Barrow if he had any vision or blindness problems, and Barrow claimed that he had a head injury from an automobile accident that affected his equilibrium. Id. at 4. Ysbrand conducted a horizontal gaze nystagmus test and observed a lack of smooth pursuit of both eyes and a sustained and distinct nystagmus in both eyes, and these are indicators that a person could be under the influence of drugs or alcohol. Id.; Dkt. # 17-3, at 4. Ysbrand next asked Barrow to perform a walk and turn test, and he observed five out of a possible eight "clues" that Barrow was intoxicated. Dkt. # 17-1, at 4; Dkt. # 17-3, at 5. Ysbrand administered a one leg stand test and Barrow stated that he had trouble with balance due to his head injury. Dkt. # 17-1, at 4. Ysbrand observed that Barrow noticeably swayed while on one foot and had body tremors, and these were

clues that Barrow could be under the influence of certain drugs. Id. at 17-1, at 4; Dkt. # 17-3, at 5.

Finally, Ysbrand directed Barrow to perform a modified Romberg balance test. Dkt. # 17-1, at 4.

Barrow's estimate of the amount of time that had passed was within the normal range, but Ysbrand observed eyelid and body tremors and Barrow noticeably swayed during the test. Id. at 5. Ysbrand asked Barrow to return to the patrol car after completing the sobriety tests. Ysbrand took Barrow's pulse, and Barrow had a very high pulse that could be an indication of drug use. Id. Ysbrand directed Barrow to blow into a handheld device to test for the presence of alcohol. Id. The handheld device is not the official test for determining a person's level of alcohol intoxication, but Ysbrand uses the device to rule out alcohol as a cause of intoxication when he suspects drug use. Id. The breath sample showed that Barrow had a blood alcohol level of .03, which is below the statutory level of .08 for presumptive intoxication for driving under the influence of alcohol. Dkt. # 17-3, at 6. However, based on the totality of the circumstances, Ysbrand placed Barrow under arrest for driving under the influence of drugs and alcohol, and the time elapsed from the initial stop to the arrest was 25 minutes. Dkt. # 17-3.

Ysbrand read Barrow the State's implied consent card for blood testing following an arrest for driving under the influence, and Barrow agreed to submit to a blood test. Dkt. # 17-1, at 6. Dkt. # 17-2. Ysbrand decided to obtain a blood test, rather than a breath test using an Intoxilyzer, because Ysbrand believed that Barrow could be under the influence of a substance other than alcohol. Dkt. # 17-1, at 6. Ysbrand took Barrow to a hospital and Barrow's blood was drawn, and the blood was placed in a kit and mailed to the Oklahoma State Bureau of Investigation (OSBI). Id. at 6-7; Dkt. # 21-3. Ysbrand took Barrow to the Rogers County Jail and Barrow was booked into jail on a charge of driving under the influence of drugs and alcohol. Dkt. # 17-1, at 7; Dkt. # 17-3,

at 1. Ysbrand also prepared an arrest report for review by the Rogers County District Attorney. Dkt. # 17-1, at 7; Dkt. # 17-3. Ysbrand states that he had no role in determining whether criminal charges would be filed against Barrow, and the Rogers County District Attorney was responsible for making the final decision as to the filing of criminal charges. Dkt. # 17-1, at 7. On March 1, 2016, the Rogers County District Attorney filed an information charging Barrow with one count of driving under the influence of alcohol or drugs in violation of OKLA. STAT. tit. 47, § 11-902(A)(5). Dkt. # 17-7. OSBI tested Barrow's blood sample on March 8, 2016 and the alcohol content in Barrow's blood was .017 and no other illegal substances were detected. Dkt. # 21-5. The Rogers County District Attorney filed a motion to dismiss the charge against Barrow, and the charge of driving under the influence was dismissed without prejudice to refiling. Dkt. # 21-6; Dkt. # 17-8.

On October 7, 2016, Barrow filed this case in Rogers County District Court alleging claims against Ysbrand and the State. Barrow alleges that Ysbrand violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and he has alleged a claim against Ysbrand in his individual capacity under 42 U.S.C. § 1983 (Count I). Barrow also alleges a state law claim of malicious prosecution (Count II) against Ysbrand, and a false arrest claim under state law against the State (Count III). Ysbrand removed the case to this Court and the State consented to the removal. Dkt. # 2.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Ysbrand argues that he had probable cause to arrest plaintiff for driving under the influence of alcohol or drugs, and he asserts that he is entitled to qualified immunity from plaintiff's claim against him under § 1983.  Ysbrand also argues that he cannot be held liable for malicious prosecution, because he had probable cause to arrest plaintiff and he was not responsible for making

the decision to file a criminal charge against plaintiff. The State argues that plaintiff cannot prevail on a false arrest claim under state law, because Ysbrand had probable cause to arrest plaintiff for driving under the influence of drugs or alcohol and other traffic violations. Plaintiff argues that the traffic stop was unreasonably lengthy and he claims that Ysbrand was "legally obligated" to issue a traffic citation, give him a warning, and release him once it was determined that there were no outstanding warrants for plaintiff's arrest. Dkt. # 21, at 10. Plaintiff claims that he was detained based solely on prior convictions for drivng under the influence. Plaintiff also claims that he "passed" a breathalizer test and that he had not committed any other crime, and he argues that Ysbrand has a history of arresting people for driving under the influence who have "passed" a breathalizer test. Id. at 3-5.

## A.

Plaintiff has alleged a § 1983 claim against Ysbrand in his individual capacity. Section 1983 provides a cause of action against any "person who, under color of statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law" of the United States. "The purpose of § 1983 is to deter state actors from using the badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields public officials from facing the burdens of

litigation and is an immunity from suit, not simply a defense to a plaintiff's claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to qualified immunity. A plaintiff must prove that the defendant's actions violated a specific constitutional right and, if the plaintiff has shown that a constitutional violation occurred, the plaintiff must show that the constitutional right was clearly established when the conduct occurred. Toevs. v. Reid, 685 F.3d 903, 909 (10th Cir. 2012). A court has the discretion to consider the steps in whatever order is appropriate under the circumstances. Id. at 910 (citing Pearson v. Callahan, 555 U.S. 223 (2009)). Plaintiff bears the burden to prove that his constitutional rights were violated and that the law giving rise to his claim was clearly established at the time the acts occurred. Cox v. Glanz, 800 F.3d 1231, 1246 (10th Cir. 2015); Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

Plaintiff claims that his rights under the Fourth Amendment to the United States Constitution were violated because he was unlawfully arrested by Ysbrand. The Fourth Amendment protects the "right of the people to be secure . . . against unreasonable searches and seizures . . . ." In the context of a false arrest claim, "an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime." Kaufman v. Higgs, 697 F.3d 1297, 1300 (10th Cir. 2012). Probable cause exists when a police officer has sufficient information "to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). This is an objective standard and a court must consider the totality of the circumstances to determine whether a reasonable officer would have believed there was probable cause to make an arrest. Koch v. City of Del City, 660 F.3d 1228, 1239 (10th Cir. 2011). Probable cause "is measured at the moment the arrest occurs and must

derive from facts and circumstances based on reasonably trustworthy information." Cortez v. McCauley, 478 F.3d 1108, 1121 (10th Cir. 2007). Once probable cause is established, a police officer is not required to search for exculpatory evidence before arresting a suspect. Cortez v. McCauley, 478 F.3d 1108, 1121 (10th Cir. 2007). A defendant is entitled to qualified immunity from a false arrest claim if there was "arguable probable cause" to make an arrest. Kaufman, 697 F.3d at 1300. "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." Stonecipher v. Valles, 759 F.3d 1134, 1141 (10th Cir. 2014). "The proper inquiry in a § 1983 claim based on false arrest is not whether the person arrested actually committed an offense, but whether the arresting officer had probable cause to believe that he had." Crawford ex. rel. Crawford v. Kansas City, Kansas, 952 F. Supp. 1467, 1474 (D. Kan. 1997) (citing Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)).

Plaintiff was arrested for violating OKLA. STAT. tit. 47, § 11-902(A)(5), which makes it a crime for any person "to drive, operate, or be in actual physical control of a motor vehicle within this state . . . [while] under the combined influence of alcohol and any other intoxicating substance which may render such person incapable of safely driving or operating a motor vehicle." In another subsection of § 11-902(A), it is a separate offense to operate a motor vehicle with a "blood or breath alcohol concentration . . . of eight-hundredths (0.08) or more at the time of a test of such person's blood or breath administered within two (2) hours after the arrest of such person . . . ." OKLA. STAT. tit. 47, § 11-902(A)(1). The Oklahoma Uniform Jury Instructions contain separate jury instructions for each offense, and having a blood alcohol level of .08 is not an element of the offense under § 11-902(A)(5). The probable cause affidavit prepared by Ysbrand identifies the offense as "DUI

ALCOHOL AND DRUGS," and this shows that Barrow was not booked into the Rogers County Jail because he had a blood alcohol level in excess of .08. Dkt. # 21-4, at 1. The facts stated in the probable cause affidavit do not reference the results of the field breathalizer test of .03. Id. at 2. Instead, Ysbrand relied on the odor of alcohol coming from Barrow's breath and person, slurred speech and unsteadiness, and the results of field sobriety tests as the basis for Barrow's arrest. Id.

The Court finds that Ysbrand had probable cause to arrest plaintiff for driving under the influence of drugs or alcohol. Plaintiff's primary argument is that he did not have a blood alcohol level in excess of .08, and he repeatedly claims that he "passed" a breathalizer test. He has provided evidence that Ysbrand has arrested other persons for driving under the influence who did not have a blood alcohol level in excess of .08, and criminal charges against these persons were eventually dismissed. Dkt. # 21-11; Dkt. # 21-15. Plaintiff also claims that Ysbrand intentionally or recklessly omitted the results of the breathalizer test from the probable cause affidavit. Dkt. # 21, at 11. However, plaintiff was not arrested because he had a blood alcohol level in excess of .08, and he was charged under a separate subsection of § 11-902 concerning impaired driving due to the use of drugs or alcohol. Dkt. # 17-3, at 1. It was not necessary for Ysbrand to include the results of the breathalizer test in the probable cause affidavit, but if he had this would have been additional evidence tending to support the existence of probable cause under the statute allegedly violated by plaintiff. At the time Ysbrand placed plaintiff under arrest, he knew that plaintiff had consumed some alcohol and plaintiff lied to Ysbrand when initially asked about his consumption of alcohol. Ysbrand smelled alcohol coming from plaintiff's vehicle and person, and he noticed that plaintiff's speech was somewhat slurred and that plaintiff seemed overly talkative. Ysbrand learned that plaintiff had several prior convictions for driving under the influence of alcohol. Criminal history,

standing alone, is not enough to support the existence of probable cause, but a person's criminal history can be considered in conjunction with other factors as part of the probable cause analysis. United States v. Artez, 389 F.3d 1106, 1114-15 (10th Cir. 2004). After learning of plaintiff's criminal history, Ysbrand asked plaintiff to perform field sobriety tests and he observed "clues" that plaintiff could be under the influence of drugs or alcohol. A breathalizer test showed that plaintiff had a blood alcohol level of .03. Plaintiff also had a very high pulse and this could have been an indication of drug use. The evidence available to Ysbrand went well beyond "arguable" probable cause, and under any standard of review he had sufficient probable cause to arrest plaintiff for driving under the influence of drugs and alcohol.

Plaintiff also argues that Ysbrand violated his rights under the Fourth Amendment by extending the traffic stop to perform field sobriety testing. A traffic stop is treated as an investigative detention, and such a stop is governed by the standards set forth in Terry v. Ohio, 392 U.S. 1 (1968). United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005). In determining the reasonableness of a traffic stop, a court must make two separate inquiries. The first is whether the police officer had a valid reason for initiating the traffic stop. United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." Id. Second, a traffic stop must not become an unnecessarily lengthy detention, but must be limited in scope to the purpose of the initial traffic stop. United States v. Rice, 483 F.3d 1079, 1083 (10th Cir. 2007). A police officer may extend the length of the traffic stop for questioning beyond the initial purpose of the traffic stop only if the officer has "an objectively reasonable and articulable suspicion that illegal activity has

occurred, or the driver voluntarily consents to further questioning." United States v. Ramirez, 479 F.3d 1229, 1243 (10th Cir. 2007).

Ysbrand initiated a traffic stop of plaintiff's vehicle after observing that plaintiff was towing a trailer without proper lighting and with the contents of the trailer not properly secured. Dkt. # 17-1, at 2. Plaintiff does not contest that Ysbrand had a legitimate basis to initiate a traffic stop, and the first prong of Terry is satisfied. Dkt. # 17-6, at 24 (plaintiff admits in his deposition that his trailer did not have lights and the load was not secured). The Court must also consider whether the length of the traffic stop was reasonable under the second prong of Terry. An officer conducting a traffic stop may request a driver's license, vehicle registration, run a computer check, and issue a citation. See United States v. Zubia-Melendez, 263 F.3d 1155, 1161 (10th Cir. 2001). An officer may also "ask questions about the motorist's travel plans and authority to operate the vehicle," in addition to obtaining the relevant documentation, without exceeding the scope of an investigative detention. United States v. Alcaraz-Arellano, 441 F.3d 1252, 1258 (10th Cir. 2006). Such questioning does not violate the Fourth Amendment as long as the questioning does not prolong the traffic stop. United States v. Villa, 589 F.3d 1334, 1339 (10th Cir. 2009); United States v. Wallace, 429 F.3d 969, 974 (10th Cir. 2005). Police must have reasonable suspicion that criminal activity is afoot to continue a traffic stop beyond the purpose of issuing a warning or citation for the traffic violation. United States v. Kopp, 45 F.3d 1450, 1453 (10th Cir. 1995). Reasonable suspicion is a "particularized and objective basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (internal quotation marks omitted). An "inchoate and unparticularized suspicion or 'hunch' is insufficient" to support reasonable suspicion. United States v. Hall, 978 F.2d 616, 620 (10th Cir. 1992) (internal quotations and citations omitted). Reasonable

suspicion "represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence." Alcaraz-Arellano, 441 F.3d at 1260 (quoting United States v. Mendez, 118 F.3d 1426, 1431 (10th Cir. 1997)).  In determining whether an officer had reasonable suspicion of criminal activity, the Court does not evaluate the facts in isolation but instead construes them together based on the totality of the circumstances.  United States v. Arivizu, 534 U.S. 266, 274 (2002).

Plaintiff argues that Ysbrand violated his Fourth Amendment rights by extending the traffic stop beyond the purpose of issuing a traffic citation, and it appears that plaintiff assumes that extending the traffic stop for any reason would constitute a violation of the Fourth Amendment.  Dkt. # 21, at 10.  There is no evidence that plaintiff consented to an extension of the traffic stop, but Ysbrand was permitted to extend the traffic stop if he had reasonable suspicion that plaintiff was engaged in some type of criminal behavior, even if that behavior is unrelated to the purpose of the traffic stop.  Alcaraz-Arellano, 441 F.3d at 1259-69.  Plaintiff claims that the only evidence supporting Ysbrand's decision to require plaintiff to perform field sobriety testing is that plaintiff had prior convictions for driving under the influence of alcohol.  Dkt. # 21, at 10.  This is not an accurate representation of the evidence in the summary judgment record.  Ysbrand states that he smelled alcohol immediately when he made contact with the occupants of the vehicle and he again detected an odor of alcohol coming from plaintiff in the patrol car.  Dkt. # 17-1, at 2.  Ysbrand believed that plaintiff's speech was slurred and that plaintiff was overly talkative, and he considered this as evidence that plaintiff was under the influence of drugs or alcohol.  Id.  Ysbrand ran a records check and found that plaintiff had several prior convictions for driving under the influence of alcohol.  The Court finds that the smell of alcohol from plaintiff's vehicle and person, plaintiff's

behavior, and his criminal history provided a sufficient objective basis for Ysbrand to extend the traffic stop beyond the purpose of writing a traffic citation.

The Court finds that plaintiff has not shown that his constitutional rights were violated during the traffic stop on February 15, 2016. Ysbrand had probable cause to arrest plaintiff for driving under the influence of drugs and alcohol, and he also had reasonable suspicion to extend the traffic stop beyond the initial purpose of issuing a traffic citation. Ysbrand is entitled to qualified immunity from plaintiff's claim against him under § 1983.

**B.**

Plaintiff has also alleged state law claims of malicious prosecution against Ysbrand and false arrest against the State, and Ysbrand and the State argue these claims require plaintiff to show that he was arrested or prosecuted without probable cause to believe that he had committed a crime.[1] Plaintiff responds that Ysbrand recklessly or intentionally omitted evidence from his probable cause affidavit that plaintiff did not have a blood alcohol level in excess of .08, and he claims that he was falsely arrested due to the material misrepresentations or omissions of Ysbrand. Dkt. # 21, at 13-15. The Court has reviewed plaintiff's response and he makes no new arguments concerning the existence of probable cause in relation to his state law claims, and the Court will rely on its finding

---

[1] The Court has granted summary judgment to Ysbrand on the only federal law claim raised in plaintiff's petition, and the Court must consider whether it should exercise supplemental jurisdiction over plaintiff's state law claims. 28 U.S.C. § 1367(c). Plaintiff's state law claims of malicious prosecution and false arrest are based on the same facts as plaintiff's § 1983 claim, and the alleged lack of probable cause to arrest plaintiff is the central element of each of plaintiff's claims. In this situation, it would be a waste of the parties' resources to decline supplemental jurisdiction over plaintiff's state law claims, and there are no novel of complex issues of state law that should be decided by a state court. The Court finds that it should exercise supplemental jurisdiction over plaintiff's state law claims.

that Ysbrand had probable cause to arrest plaintiff for driving under the influence of drugs or alcohol in ruling on plaintiff's state law claim.

An essential element that plaintiff has the burden to prove for his claims of malicious prosecution and false arrest is that he was arrested or prosecuted without probable cause to believe that he had committed a crime. To prevail on a claim of malicious prosecution, plaintiff must prove the following five elements:

> (1) the defendant's institution of the former action; (2) its termination in the plaintiff's favor; (3) the defendant's want of probable cause for pressing the former suit against the plaintiff; (4) the presence of malice in the defendant's conduct; and (5) damages.

Reeves v. Agee, 769 P.2d 745, 752 (Okla. 1989). The Court will assume for the purpose of this Opinion and Order that a police officer initiates an action by arresting a defendant and completing a probable cause affidavit,[2] and the Court has already determined that Ysbrand had probable cause to arrest defendant. Although the criminal charge against plaintiff was later dismissed by the Rogers County District Attorney, Ysbrand had probable cause to arrest defendant and recommend that a charge of driving under the influence of drugs and alcohol be filed pending the results of plaintiff's blood test, and plaintiff cannot prevail on a malicious prosecution claim against Ysbrand. As to plaintiff's false arrest claim, the essential element of this claim is that plaintiff was arrested without proper legal authority, and plaintiff has the burden to prove a lack of probable cause supporting the arrest. Roberts v. Goodner's Wholesale Foods, Inc., 50 P.3d 1149, 1152 (Okla. Civ. App. 2002).

---

[2]     Ysbrand states that he has no involvement in the decision to file formal criminal charges against a person after an arrest, and the charging decision is made by the district attorney. The act giving rise to the malicious prosecution claim against Ysbrand is plaintiff's arrest, not the filing of a criminal charge in Rogers County District Court.

Plaintiff has not met his burden to show a lack of probable cause for his arrest, and the State is entitled to summary judgment on plaintiff's false arrest claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Dkt. # 17) is **granted**. A separate judgment is entered herewith.

**DATED** this 17th day of July, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE